SHELLY MOTORS, INC., Plaintiff-Appellee, *v.* BERTRAND BORTNICK, dba Sarge's Auto Sales, Defendant-Appellant

NO. 7407

CIVIL NO. 54814

JULY 24, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* Defendant-Appellant Bertrand Bortnick, dba Sarge's Auto Sales, appeals the summary judgment entered in favor of Plaintiff-Appellee Shelly Motors, Inc. The question is whether, as a matter of law, Mr. Bortnick failed to exclude or modify a warranty of title in one of four ways permitted by Section 2-312(2) of the Uniform Commercial Code (UCC) (HRS § 490:2-312(2), 1976). We hold that Mr. Bortnick has raised a genuine issue of material fact and, therefore, we reverse.

Allen Vidal purchased a wrecked 1976 Toyota Celica at an auction and obtained a Certificate of Ownership showing him to be both registered and legal owner.

Thereafter, someone stole Warren Okinaka's 1976 Toyota Celica and replaced its vehicle identification number and license plates with those from the wrecked Toyota.

On December 30, 1977, Teddy Temple, representing himself to be Mr. Vidal's friend, sold the stolen Toyota to Defendant-Appellant Bertrand Bortnick, dba Sarge's Auto Sales, for $2,200.00. Temple gave Bortnick Vidal's Certificate of Ownership containing

Vidal's signatures[1] as transferor. The spaces provided for the name(s) of the new registered and legal owner(s) were left blank. Later the same day, Mr. Bortnick sold the stolen Toyota to Plaintiff-Appellee Shelly Motors, Inc., for $3,567.75 and gave it Vidal's Certificate of Ownership.

On January 13, 1978, Shelly Motors sold the stolen Toyota to Mr. Henry Compania for $5,389.00. Shelly Motors signed the certificate in the space provided for registered car dealers and inserted Mr. Compania's name as the new registered owner and Bank of Hawaii's name as the new legal owner.

On February 24, 1978, the Honolulu Police Department took the stolen Toyota from Mr. Compania. Soon thereafter Shelly Motors gave Mr. Compania a replacement Toyota.

Shelly Motors sued Mr. Bortnick for breach of warranty, for negligence, and for gross negligence, asking for general and punitive damages. In due course, Shelly Motors filed a motion for summary judgment.[2] The court granted the motion and entered judgment for Shelly Motors, against Mr. Bortnick, in the amount of $3,567.75, plus interest, costs, and attorney's commissions. Mr. Bortnick appeals the judgment.

Section 2-312 of the UCC (HRS § 490:2-312, 1976) states in relevant parts as follows:

§490:2-312 Warranty of title and against infringement; buyer's obligation against infringement. (1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that

(a) The title conveyed shall be good, and its transfer rightful; and

\* \* \* \* \*

(2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title

---

[1] Mr. Vidal signed in the spaces provided for the transferor registered owner and the transferor legal owner.

[2] Shelly Motors' motion for summary judgment focused exclusively on the warranty issue. Since then, the negligence and gross negligence claims have been completely ignored by all participants in this case.

in himself or that he is purporting to sell only such right or title as he or a third person may have.

\* \* \* \* \*

Thus, the issue before the trial court was whether, when Mr. Bortnick sold the stolen Toyota to Shelly Motors, he excluded or modified a warranty of good title (X) by specific language (i) that he did not claim title in himself; or (ii) that he was purporting to sell only such title as he or Mr. Vidal had; or (Y) by circumstances which gave Shelly Motors reason to know (i) that he did not claim title in himself; or (ii) that he was purporting to sell only such title as he or Mr. Vidal had.

In opposition to the motion for summary judgment, Mr. Bortnick stated in an affidavit that "I told Steve Foytich[3] words to the clear effect that I was giving to him only such right or title that Allan Vidal just gave me, and that its [sic] an open title. [Footnote added.]" In other words, Mr. Bortnick says that he said what UCC § 2-312(2) says he had to say in order to exclude a warranty of good title. He has raised the permitted exclusion noted in (X) (ii) above. His statement provides a sufficient basis to create a genuine issue of material fact whether he, as permitted by UCC § 2-312(2), modified the warranty of good title by specific language that he was purporting to sell only such title as he or Mr. Vidal had.

Our holding is consistent with the holdings in *Jones v. Linebough,* 34 Mich. App. 305, 191 N.W.2d 142 (1971), cited by appellant, and *Sunseri v. RKO-Stanley Warner Theatres, Inc.,* 374 A.2d 1342 (Pa. Super. Ct. 1977), cited by appellee. We read those cases as authority for the rule that the only way for a seller to exclude or modify a warranty of good title is via strict compliance with the requirements of UCC § 2-312(2). Here, Mr. Bortnick has presented evidence from which a trier of fact could reasonably conclude, if it chose to do so, that he did exactly what UCC § 2-312(2) required him to do.

Reversed and remanded for further proceedings consistent with this opinion.

*John F. Schweigert* for defendant-appellant.

*Wesley H. Sakai, Jr. (Edward R. Bendet* with him on the briefs) *(Bendet & Fidell* of counsel) for plaintiff-appellee.

---

[3] In his affidavit, Mr. Bortnick identified Steve Foytich as "an employee of Shelly Motors."